Case number 24-5199, USA v. Joshua Brown, argument not to exceed 15 minutes per side. Mr. Monahan, you may proceed. Good afternoon, Your Honors. Matt Monahan, Assistant Federal Defender on behalf of Mr. Brown. May it please the Court. Mr. Brown wrote letters to the District Court urging an explanation for what looked to him like a vindictive, superseding indictment. Everyone ignored those letters, and yet here we are, we're addressing that issue on appeal. In addition, at sentencing... Was he represented by counsel when he was writing? It's plain error, Judge. You're right. He was represented by counsel. It's still plain error, even though those letters were there because counsel did not adopt those letters. So it is a plain error case. In addition to the vindictiveness issue, at sentencing, it's just not clear from the record and from the poorly worded PSIR whether the District Court appreciated that Mr. Brown was not in continuous federal custody. That's relevant for credit purposes. But beginning with this vindictive prosecution issue, it's not a case of actual vindictiveness. It's the presumption, and that turns on whether there's a reasonable likelihood of vindictiveness. The presumption's met here for three reasons. One goes to stake. The prosecution in the motion to suppress loses some of the best evidence you can get, a confession, essentially, to drug quantity, to going out of state, to purchasing kilogram quantities of methamphetamine multiple times. And in addition to that, it's weeks after this, or in short order after this suppression of statements, that the government supersedes to add three discrete acts of distribution that were already known to the government and covered by the dates of the conspiracy charged in the original indictment. The original indictment charges an August, I believe it's an August to March conspiracy. The three distinct distribution counts are in October within that window. The third reason here is sentencing exposure. It's the addition of the discrete distribution charges that makes Mr. Brown career offender eligible. And career offenders don't tend to do better at sentencing. So it's... Do they do worse? My understanding, the government at least is suggesting that there was no practical impact on sentencing, unlike in the Zakari, for example. That clearly raised the mandatory minimum, right? We don't have that here, do we? I agree that we don't have the mandatory minimum situation that you have in Zakari. And I see the government's point that, you know, it all kind of comes out the same in the wash. But I think two problems there. One, it's a bit of a hindsight bias. It's now we know it comes out the same. Did we know that at the time? I think that that's not at all clear from the record. Two, there's down the line... Why wouldn't it have been clear to them, even when they added the charges, that it was not really going to... I mean, it begs the question of why they added the charges. Right, why? I agree with that. But why wasn't it obvious to them? You just look at the table, don't you? You look at the table... And anticipate what probation was going to say? I think it depends on what's coming in as to drug quantity. Because ultimately it's the drug quantity that's going to speak to where your offense level lands on the table. So it's not without possibility. So to cover the bills on, like, a low drug quantity, as long as he's a career criminal, then that's... I don't even know it needs to be low drug quantity. But I do agree. It does sort of beg this question of a need for an objective on-the-record explanation for why career offender designation comes in. But you're saying the conspiracy alone would have... It would have turned on... Drug quantity would have driven the sentence. That's right. But adding the substantive counts made it so that the career criminal would drive the sentence. Maybe not even drive the sentence, Judge, but it's sort of two levers. Now there's two avenues by which the government drives the sentence. You're saying if they lose, if the drug quantity didn't come out the way that they had expected, they can fall back on the... That's right. Okay, so then why wouldn't they have just added that anyway? That speaks to the vindictims. Right, especially because it's based on information they already know. It's based on a cooperating witness who they've had from the start. But your theory is that it was vindictive. It was in... They were essentially... They were being vindictive because of the... Somebody... Because he filed what was essentially a no-brainer suppression motion because they agreed to it. I mean it wasn't like hard-fought, back-and-forth, all these motions. Like, again, in Zachary, they're obviously fighting and then say, okay, fine, we're going to punish you for being a pain in the butt. In this case, they're like, okay, you're right, yeah. So two... I follow you there, Judge. Two points. One goes to kind of doesn't then the government have a good reason? But the other is what about this concession on the suppression motion, this no-brainer suppression motion? Start there. I think Goodwin tells you that the relevant inquiry here is was the superseding indictment meant to chill the exercise of rights? And that doesn't turn on the government's response. It turns on the timing between indictment and motion. I don't think the government gets credit for bringing an indictment that includes a confession that is so obviously in violation of Miranda that once they read the motion... And it wasn't a joint motion, so it wasn't like, you know, counsel said, hey, do you concur? They read the motion, they read it, they say, okay, fine. I don't think that this Goodwin line of vindictiveness turns on the government being able to say, well, you know, we didn't fight too hard. No, it turns on the timing and the exercise of the right. Assuming that you're correct, that there should be a presumption of vindictiveness here because it's an objective test. Assuming you're right, you also said that we review for plain error. So we've got the four steps of plain error. So why isn't this not a violation of substantial rights? Because in the end he's getting the same sentence because in the end he's got the five or four kilos of meth. Yeah, how does he show prejudice under three and then how does he show this impairment to the integrity of the process on four? Right. So I think, one, there's downstream consequences to a career offender tag. There's downstream consequences to multiple convictions. Both of those are made possible by this superseder. The downstream consequences to career offender, they may not even be knowable now. It may depend on a second step act or future changes to the guidelines that will expressly exempt a career offender. Are there cases that say that we should factor that in in step three and four of plain error? I don't see a case that speaks to career offender and downstream consequences. And it's in the basket of cases that's cited here. It's either Ladeau or Howell. It's one of the plain error cases where the government concedes that if you add the mandatory minimum, if you add something that makes the end result worse, you're going to get to prejudice on prong three. And I think that's the takeaway for me is that once you put career offender on Mr. Brown, his outcome isn't improving versus not having that tag. What would be a career offender if these were not added? Is that correct? Under this court's decision, this court's en banc decision in Havis or Havas, the conspiracy charge does not make him career offender eligible. So it really turns on the distribution counts, it being the career offender designation. There's that hypothetical that maybe down the line being a career offender would have some substantial consequences that we may not know. Are there any other consequences? Multiple convictions. Multiple convictions also generate prejudice. On the one hand, basic math, one is a more favorable outcome than, in this case, I think, three. You've got two distribution plus the conspiracy. But also there's special assessments that are tied to each. There's always the risk of grouping when you get multiple convictions. So I think in his case, though. In his case, he does have to pay the $100 per count of conviction, right? So there is, in fact, a $300 increase in what he has to pay if there was just a single count of conviction. Yep. That's right, Judge. Yep. So it is a change. It is a change to his bottom line, even if in this particular case. So if we thought then that there should be a presumption of vindictiveness on the objective standard, then what should happen? Should we send it back to the district court to evaluate whether that presumption was rebutted by the government? Or do we decide whether the presumption that we're . . . I'm hypothetically going into the weeds here. Right. Do we decide whether the presumption was rebutted by the government? And if so, what should either the district court or we be looking at to decide whether the presumption was rebutted here? I agree that it's the remedies remand for an on-the-record something. Here, and as I look at all of these cases, whether it's preserved or not, ultimately it's this court that's grappling with the presumption and the rebuttal. So I do think it's worth looking at the rebuttal reasons now, even though I could also see a district court having the first shot at them. Here, where I see the rebuttal problem is in the fact that everything about the superseding indictment is known to the government at the time of the original indictment. It's not a change in theory. It's not like the case in Poole, where you've gone to jury trial. On the eve of trial, you've got this motion in limine that just disrupts the state's narrative. So you would say any time the government supersedes an indictment and adds something that they knew about before, if there's been any intervening motion or action by the defendant, there's a presumption that it was vindictive? No, I don't think it's that. They have to have a perfect indictment from day one? No, I don't think it's the need for imperfect. And I think Goodwin in all these cases teach that discretion on the end of the prosecutor is an important point that has to be preserved. You're balancing that against the exercise of rights on the other side. I think it's really case-specific here when it goes to timing and it goes to the content. You look at what factually comes into that superseding indictment that was new, a new theory. And what does it do to say plea negotiations? I thought the facts were already known to you. Known to the defense. I think that's not entirely clear on the record, given that the original indictment does say the span where you've got August to March. The answer to that is the defense had lots of remedies. They could have asked for a continuance or any number of things. They certainly could have. I think maybe another frame for that. I mean, if there's new evidence, as you point out. If there's new evidence, I think that moves us out of vindictiveness. Or new theory, new evidence. That moves you out of vindictiveness, I think, every time. I have yet to find a case in any circuit that says new evidence is still evidence of vindictiveness.  I see that I'm out of time. It is hard to see this red light. I know. I was befuddled in the beginning. But you are definitely out of time. So if you want to save your rebuttal time. If I could. Thank you. Thank you. May it please the court. My name is Brian Samuelson, and I represent the United States. The defendant's sentence should be affirmed. And I think the key here is that this case looks much different than cases where courts have presumed vindictiveness. So I'd like to start with the allegations of vindictiveness here. This court has found a presumption of vindictiveness. Where, one, a pretrial motion presented a grave threat to the prosecution's case. And, two, the prosecution responded by adding or substituting charges that changed the sentencing exposure, the statutory sentencing range. And neither of those things happened here. So starting with the stake, the prosecution's stake in deterring or punishing this kind of pretrial motion, the motion to suppress didn't require the government to redo anything. It didn't require the government to change its theory of the case. No, but the government assumed in the beginning that they would be able to introduce his confession. And then he has this agreement with the government that, oh, yeah, there was a bit of a mistake here, and his confession should be suppressed. So the government agrees with that. And then just a couple weeks later, am I right, the government issues the superseding indictment based on information that the government already had. So, you know, these three distribution counts, everybody knew about those when the original indictment was filed, correct? That's true, Your Honor. Okay, so what on earth accounts for the government moving for the superseding indictment two weeks after losing, acknowledging that they were wrong and hoping to introduce the confession? Well, Your Honor, I think the timing here counts both ways. It is true that this superseding indictment came six weeks after the motion to suppress. But it also comes two months before trial was then scheduled to begin. But what reason for adding the three counts? Well, I mean, I can't speak to what's not in the record. But what we do know is that the case law allows prosecutors to add charges after a breakdown in plea negotiations and prepare their case for trial. And I think this record is perfectly consistent with a prosecutor preparing the case for trial. And there's two pieces of evidence in the record that support that. One is the timing, that this is two months before the trial was scheduled to begin. This is not five days before trial as in Ladeau or something like that. The second is the nature of the additional charges themselves. When we had a single conspiracy count, the prosecutor would have had to take this case to trial, putting all the chips in that basket, so to speak. It doesn't make any sense. Why wouldn't they have been there from the beginning? There were other people in this indictment that had substantive counts, right? That's true. If there was this one defendant who was involved in a specific transaction, as I recall, why wouldn't that person also have a substantive count? I mean, I'm not saying – I have no idea. It just doesn't make a lot of sense. And the record doesn't have an explanation because this wasn't raised below, so the prosecutor hasn't had a chance to explain themselves in the record. So why shouldn't we say that there is an objective reason for a presumption of vindictiveness here and then say, but you, the government, get to try to rebut that presumption because it's a rebuttable presumption? I don't think that holding in this case would be consistent with Goodwin. The Supreme Court has cautioned that in the pretrial context, courts should be very careful about reaching a presumption of vindictiveness in order to allow prosecutors the flexibility to bring new charges, to adjust their case to changing circumstances so that this kind of – the case is not frozen with the first indictment. And Goodwin cites a motion to suppress as the kind of pretrial motion that does not routinely trigger a vindictive response. Well, suppose that we say, hypothetically, that we think there is enough here for there to be a presumption of vindictiveness. Then what would you point to to say, but you should say that it has been rebutted or, because we're on plain error, that you win anyway for whatever reason you want to say? So, hypothetically, you lose on whether there should be a presumption of vindictiveness here. I do think the plain error standard is key here. Because the case looks so much different than Ladeau or Zakari, the authorities where this court has reached a presumption of vindictiveness. And I think that was highlighted by the conversation just a few minutes ago about the potential prejudice here. The statutory range hasn't changed. The guidelines range didn't change. The highlighted punitive effect is unknown downstream consequences from being a career offender. And that looks much different than, say, Ladeau, where the successful motion to suppress prevented the government from going forward on the original charge of indictment. I mean, it removed – What about the simple fact of the $100 per count? Well, I agree the defendant is charged that additional money. That's true. And so if we went through the different factors of the plain error test with this presumption of vindictiveness, there is the possibility of a result being different, which is not to have the $300 extra to have to be paid. Yes, Your Honor. And I do agree that if the plain error standard is satisfied, the appropriate remedy is a remand for the next stage of the burden-shifting framework, which is a chance for the government to – Does the plain error standard drop away then? Or is there still plain error review on whether you've met your burden or whatever? Because this was never raised below. Is the entire exercise subject to plain error? So let's say, okay, there's plain error that there was a presumption. It goes back. Then you rebut it with whatever the argument is going to be. And then is that ruling subject to plain error too because the whole thing is plain error? I think if the case is remanded and there are proceedings on whether there is a – whether this was a vindictive response and then that decision was appealed, Your Honor, I'm not sure what standard of review would apply to that decision. I do think plain error here doesn't drop away in the sense that nobody raised this argument below. So the question really is what should the district court have done when nobody was making this decision? What could the district court have known? And the district court would have had no way to know that this person would have been a career offender based on the addition of these charges. So that right away I think is where the plain error standard starts to bite. Also, the district court would have known that this case, whatever the career offender status, looks much different than Ladeau or Zakari where the motion to disperse was fiercely litigated and presented a grave threat to the foundation of the prosecution's case. It also would have known that this case looks much different because the statutory penalties in those cases jumped quite a bit with the addition of new charges. And I haven't seen any case, certainly none cited in the briefs, where there was a presumption of vindictiveness and the statutory penalties remain unchanged, let alone the guideline penalties remain unchanged. I'm curious. So the error has to be plain. And it's not clear to me at what point in time it would have been plain to a district court that this was a problem. I mean, unless they're constantly monitoring the docket, I don't know that you know exactly when the charges are filed necessarily or when this is. I don't know. But what about the fact that he is writing the letters to the court? So even though we can't take that into account in the sense that you can raise an argument that counsel isn't raising, does it go into the question of whether it was plain or not because the district court at least was alerted to the fact that this was going on? I think it does, Your Honor, but not in a way that helps the defendant. The court knew that the defendant was writing these letters, and it knew that counsel was not bringing a vindictive prosecution motion. And I think that does weigh into whether the court was required to act on its own accord. So I think the fact that certainly defense counsel was aware of this issue and was choosing not to file it would weigh into the plain error analysis. This case compares favorably to cases where there was no presumption of vindictiveness. For example, in Howell, the new charges changed the defendant's guidelines range. That was not enough to trigger a finding of presumption. Or I think this case compares favorably to O'Lear, where as plea negotiations wound down, the prosecution added new charges to prepare the case for trial, and that resulted in an additional consecutive term of at least two years. That, again, was not enough to trigger a presumption of vindictiveness. So the response here, the new charges here, certainly compare favorably to cases where there was no presumption. And under a plain error standard, a court faced with those kind of facts in the record would have no basis to sua sponte, call for an inquiry into whether these charges were vindictive or not. Are there any cases where district judges have called sua sponte for investigation of presumptive vindictiveness that you know of, one way or the other? I'm not aware of any. Certainly there are cases that have come before this court on plain error review. I'm not aware of the district court sua sponte calling for those sorts of things. I did want to say one more thing in response to the timing argument here. As this court knows, there was the motion to suppress, and then six weeks later the superseding indictment came in. And that timing is identical virtually to the timing the Supreme Court addressed in Goodwin. And there the defendant was originally charged with a misdemeanor, which would typically trigger a bench trial before a magistrate judge in that jurisdiction. The defendant demanded a full-blown jury trial in district court. Six weeks after that case was transferred to district court, the government added felony charges. So the timing there is identical. And that, again, was not enough to trigger the presumption of vindictiveness. When was the motion to suppress ruled on by the district court here? The motion to suppress was not ruled on until after the superseding indictment was filed. So the superseding indictment was filed before the court made its ruling. But it was like an agreed order or something, wasn't it? It's true, Your Honor. There wasn't anything to do, was there? No, no, and I think that goes to the lack of a vindictive motive. This was not a highly contested order. So then was the agreement made between the prosecution and the defense? So the motion to suppress was filed in February 2023. The United States response was filed about a month later, in March of 2023. And then the superseding indictment was later that month. Later than March. Later than March. So approximately two weeks after the United States filed its superseding. I thought that I remembered a two-week thing. Yes, Your Honor. And there are approximately two weeks between the United States' response to the motion to suppress and the superseding indictment. I think the six-week figure is maybe a little bit more fair because it is the actual motion to suppress that allegedly triggers the vindictive response, which is where that six-week figure comes from. Well, you can imagine, hypothetically, it either being the filing of a motion to suppress that hypothetically irritates the government so much that they decide they're going to be vindictive, or hypothetically it could be the government losing the motion to suppress in a contested motion to suppress, in which case the government is piqued at that. And here the government says, oh, yeah, we recognize completely that this confession is not to be allowed in, the government realizes and agrees. So it's hard to argue one way or another, but that's why you have presumptions, and that's why there's not an argument. As I understand it, there's not an argument here that there was actual vindictiveness, that there was some prosecutor in the AUSA saying, oh, my gosh, these people, they filed their motion to suppress, and we're going to get them. Yes, Your Honor. There's no evidence at all of that sort of thing. And I do think the timing here, whether it's six weeks or two weeks from the triggering event, I do think it's also important that it was two months before trial, which is perfectly consistent with the government preparing its case. So do you agree that this presumption is rebuttable? Yeah. So the burden-shifting framework is that the defendant is tasked with presenting some evidence that triggers the presumption. It's even harder here because it's plain air review. But that is certainly not the end of the story, that the government, if that presumption is found, that just moves to the next stage, which is the government gets a chance to rebut that. And so what would the government do, if you don't want to say actually here, hypothetically here, what would the government do to rebut? Yes, Your Honor, and I hesitate to speak to evidence that's not in the record. Right, I'm not asking you to do that. I can speculate about what types of evidence might be relevant. There might be communications between counsel that discuss either the superseding indictment or plea negotiations that might shed some light on the events that happened. There might be an on-the-record statement from the prosecutor to explain their thinking when they filed the superseding indictment. I think both those types of evidence would be relevant. So that would argue that we should remand should we think that there is a presumption of vindictiveness based on objective as opposed to subjective. If the court has already reached the presumption of vindictiveness, that would argue for a remand for the chance for that kind of evidence to be introduced. Of course, the existence of a potentially plausible explanation doesn't change the plain error analysis here, and the Supreme Court has cautioned that that presumption should not be reached lightly. So I urge the court to find, particularly on plain error review, that this case is much different than Lideau, much different than Zakaria, and that the court was not required to launch this inquiry sua sponte, and that therefore there was no plain error in the court's actions below. Thank you. Thank you.  What does a district judge do, I think, is the meat of, Judge Nelband, in your question on plain error review? For me, it's Lideau. It's in a really fact-specific scenario where you see an indictment, motion to suppress, and then this tight timeline between a response where you say, okay, fine, the confession's out, two weeks later, superseding indictment. Then you get these letters. If you look at Zakaria, for example, and I'm a district judge, and I say, look, there's a battery of motions filed in that case. They raise the mandatory minimum, seems obvious, and the charges that were added are a stretch. None of that is present here, nor is it plain. That's the thing, is the sentencing impact is not plain. In that case, in Zakaria, for example, you could say, well, okay, it's obvious that a mandatory minimum is impacted. You could look up the statute. That's right there on your right. Here, it's not plain to me or obvious to a district judge that . . . Look, maybe it sounds, okay, yeah, career offender sounds like it's worse, but even here today, you're saying, well, there could be some downstream effects or whatever, but I don't see how that's . . . how is that plain? I think plain and prejudice are different. The problem with plain error in this area where all the case law from Goodwin on says it's really flexible. We're not . . . a presumption of vindictiveness, a reasonable likelihood of presumption, it's a spectrum of events. It's a wide variety of factual scenarios. So to get to plain error in that scenario, it does ask a little more of district courts, I agree, but not a lot more because when the presumption hits, it turns on stake and reasonableness. And stake is always present when the government's losing its best evidence. The government always has a stake in carrying its burden. What makes a burden lighter than a confession to, yep, I went down there and got that? But that argument seems like it proves too much because then it says, okay, any response to any motion to suppress is going to raise a vindictiveness problem. But we know from Goodwin that's not true. I think Goodwin is . . . I agree. It really doesn't boil down to these hard and fast rules. Goodwin and Howell to me are interesting because there's no . . . Goodwin and Howell are about the exercise of the right to the jury trial. Howell in particular, there's no motion to suppress. Goodwin says that just saying I want a jury trial is never going to get you to a presumption of vindictiveness. That one's just too low. But I think it's timing. It's why . . . timing plus facts. Let me ask you this because I know your time is running out. The letters, even though the letters can't raise an issue and it's plain error, are they relevant to whether it was plain or the judge is on notice or something? Are there any cases that say that or anything on point?  Not that I can find. Not that I can find. But what makes it relevant is it's letters plus the facts of this superseder. It's not a situation where you've got a whole new theory or different conduct. It's distribution of methamphetamine in a case about the distribution of methamphetamine. It's evidence coming in from a cooperator that even the district court here, and this is a parallel to Zakari, the district court says there's some issues with the government's case. Case in point, I think, there's an acquittal on one of the three added charges. And at sentencing, the district court says, yeah, that was the lean one. That was the one where the government did have a problem with its proofs. So why bring three distribution counts in a distribution case, one of which you know is lean, leading to an acquittal, in a case where you already knew you had a Miranda issue so obvious that you agreed to suppress? All of those fact-specific pieces of this case speak to the plain error. They also speak to how distinct it is and how flexible the law is. I see that I'm out of time. Thank you, Your Honors. Thank you both for your argument. The case will be submitted and the clerk may adjourn the court.